IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AYYAKKANNU MANIVANNAN,

        Plaintiff,

v.                                                                       Civil Action No.: 1:17cv192
                                                                              (Judge Keeley)

GRACE M. BOCHENEK,
SUSAN MALIE, and
ISABEL COTERO

**REPORT AND RECOMMENDATION**

This matter before the Court is pursuant to the "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim," (ECF No. 11), filed on January 8, 2018, by Defendants, Grace M. Bochenek, Susan Malie, and Isabel Cotero. On November 7, 2017, District Court Judge Irene M. Keeley entered an order, referring any motions filed in this case to the undersigned for written orders or report and recommendations. (ECF No. 5).

**I. Relevant Background**

Plaintiff, Dr. Ayyakkannu Manivannan, is a former employee of the United States Department of Energy (DOE) at the National Energy Technology Laboratory (NETL) in Morgantown, West Virginia. Defendant, Grace M. Bochenek, Ph.D., is the Director of NETL; Susan Malie is an Attorney-Advisor at NETL; and Defendant Isabel Cotero, is a federal contractor that was working at NETL at the time of the alleged acts addressed in Plaintiff's Complaint.

Plaintiff was placed on administrative leave on August 12, 2015, during an internal investigation into allegations against him and was forbidden from accessing NETL property or spaces. (ECF No. 12 at 4). Upon the onset of administrative leave, Plaintiff's office was secured

under lock and key, and controlled by the NETL security personnel. (ECF No. 12 at 4). No one was permitted access to the area without consultation with the NETL Office of Chief Counsel. Id.  Plaintiff tendered his resignation on June 16, 2016, which became effective on June 17, 2016.  Id. at 3.

On September 1, 2016, Plaintiff's former office was assessed by his previous Supervisor, Dr. David Alman, who was accompanied by Mr. Mark Hunzeker, Attorney-Advisor in the Office of General Counsel, Mr. John Moore, a representative of the NETL security office, and Mr. Daniel Doyle, President of the American Federation of Government Employees. (Id. at 4).  Prior to moving any items in the office, the security officer took photographs of the office, its condition, and its contents. Id. Dr. Alman then proceeded to identify and separate government property from Plaintiff's property. Id. Items identified as government property were returned to the NETL supply system management, and items identified as belonging to the Plaintiff remained secure in the office with access controlled by NETL security and the NETL Morgantown site manager. Id.

On September 2, 2016, Mr. Hunzeker contacted Plaintiff's attorney to arrange the return of his personal property outside the sliding gate at the NETL property site. Id. at 5. On September 14, 2016, Plaintiff's attorney responded to Mr. Hunzeker with a request via electronic mail to allow Plaintiff, under security escort, to access the office in order to personally identify which items belonged to him and which items belonged to West Virginia University or NETL, citing that Plaintiff is the only individual with such detailed knowledge of his items. (ECF No. 17-3). Defendant claims that Mr. Hunzeker never received any responsive communications from Plaintiff or his attorney for arrangements. (ECF No. 12 at 5). Plaintiff claims that Mr. Hunzeker

never responded to his attorney's September 14, 2016, request or made any other effort to communicate with Plaintiff or coordinate arrangements. (ECF No. 17 at 8).

According to Mr. Hunzeker's Declaration, sometime in January 2017, two of Plaintiff's former colleagues, Dr. Richard L. Pineault and Mr. Daniel J. Haynes, requested permission to access Plaintiff's former office in order to search for government property. (ECF No. 12 at 5). While searching for government property they identified and separated property which they knew belonged to the Plaintiff and Dr. Pinault returned those items to the Plaintiff at the Plaintiff's residence later that day. (ECF No. 13-6 at 3). There was no production of a written inventory or requirement for Plaintiff's signature to sign for receipt upon this personal delivery. Id.

According to the same Declaration by Mr. Hunzeker, by returning the property to the Plaintiff, Dr. Pinault and Mr. Haynes acted on their own initiative, without any notice to, or direction from, anyone in authority at NETL. Id. However, it is unclear whether or not Dr. Pinault and Mr. Haynes were alone when they conducted this search. Mr. Hunzeker's Declaration states that they were given a key by NETL security, indicating that the ensuing events were conducted without any security personnel present to witness the removal of any items or supervise the search. Id. On the other hand, the Defendant's Memorandum indicates that Dr. Pinault and Mr. Haynes were, "escorted by NETL security… [when they] … entered the office," which leads the court to presume that there was security personnel present during the search, who would have witnessed and supervised any removal of Plaintiff's personal items. (ECF No. 12 at 5).

On February 3, 2017, Morgantown Police Officer Matt Beavers was dispatched to a "Talk With Officer" by public service at the Department of Energy. (ECF No. 17-4). Officer

Beavers contacted both Plaintiff and Mr. Hunzeker and was told by Mr. Hunzeker that he would contact the supervisor at the Department of Energy and have them set up a time for Plaintiff to retrieve his personal items. (ECF No. 17-4). A week later, Officer Beaver was contacted by Plaintiff, who stated he had not heard from the Department of Energy. (ECF No. 17-4). Officer Beaver again contacted Mr. Hunzeker, who stated that he had contacted the Department of Energy and they had advised him that Plaintiff's property had already been returned. (ECF No. 17-4). Mr. Hunzeker did not inform Plaintiff or Plaintiff's attorney of the DOE's advisement regarding the return of the items between these two contacts with Officer Beaver, but advised Officer Beaver to advise Plaintiff to contact him about the items. (ECF No. 17-4).

On March 2, 2017, Plaintiff's attorney was contacted by Mr. Hunzeker by electronic mail inquiring as to whether he was still Plaintiff's attorney and mentioned in that email that some items had been delivered to Plaintiff's residence on January 11, 2017, by an employee of the agency. (ECF No. 17-5). Plaintiff's attorney says that this was the first time he was made aware of any delivery that occurred. (ECF No. 17-5). Plaintiff had indicated to his attorney that due to the extensive delays on the part of NETL in responding, Plaintiff no longer intended to use his attorney's services on this issue. (ECF No. 17-5). Mr. Hunzeker was informed of this by the Plaintiff's attorney, via electronic mail on March 23, 2017. (ECF No. 17-5). There is no indication that Mr. Hunzeker reached out to Plaintiff after receiving knowledge of this information.

The Plaintiff proceeding *pro se* filed a civil action in the Magistrate Court of Monongalia County, West Virginia, on April 5, 2017, against Dr. Grace Bochenek as Director of NETL. (ECF No. 23 at 2). Plaintiff solely requested relief from the court to retrieve his personal belongings in his former office at the NETL Morgantown site. Id. The case was removed to this

Court on December 14, 2017, and assigned Civil Action No. 1:17cv216. However, prior to removal, the civil summons for that case arrived at NETL on or about May 3, 2017, by certified mail. (ECF No. 12 at 6). The summons was signed for by Defendant Isabel Cortero at the NETL mailroom. Id. Defendant Cortero's responsibilities included receipt and distribution of official mail. Id. Mailroom personnel then delivered the summons to the NETL Executive Suite where Susan Malie, Acting Chief Counsel at NETL, signed an internal correspondence accountability log. Id. Defendant Grace Bochenek stated that she was never personally served with a summons in this case and did not sign for one by certified mail. (ECF No. 1-5).

Plaintiff submitted a Freedom of Information Act (FOIA) request in May 2017, requesting "records showing Mark Hunzeker arranging a visit for Dr. Manivannan with his supervisor to have him come to NETL to collect his personal belongings from his office, as well as other documents." (ECF No. 17-9 at.4). On May 5, 2017, Plaintiff received a response that stated NETL conducted a search for responsive records, and no responsive records were found. (ECF 17-9 at 4). Plaintiff appealed this determination, challenging the adequacy of the search conducted under the FOIA. (ECF 17-9 at 6). On May 23, 2017, the Office of Hearings and Appeals (OHA) responded, saying that DOE/NETL is withdrawing its May 5, 2017, determination, which formed the basis for this appeal and that NETL indicated it will issue a new response letter after it conducts an additional search. (ECF No. 17-9 at 4). OHA thereby dismissed Plaintiff's FOIA Appeal as moot (OHA Case No. FIA -17-0012.) Id.

On June 8, 2017, the Magistrate Court of Monongalia County ordered a Default Judgement in favor of Plaintiff. Following the judgment, Defendant Grace Bochenek appeared specially before the court by Helen Altmeyer on June 21, 2017, and moved to set aside the Default Judgment entered against her pursuant to Rule 10(e) and Rule 17 of the West Virginia

Rules of Civil Procedure for Magistrate Courts on the basis that Defendant Bochenek was not properly served under West Virginia Rule 4 of the Rules of Civil Procedure for Trial Courts of Record. Defendant Bochenek also moved for dismissal on the grounds that Plaintiff failed to state a clear claim, requested relief in an amount outside the parameters for jurisdiction and authority for West Virginia Magistrate courts, and on the ground that Dr. Bochenek is not a proper Defendant in this case.

On August 18, 2017, a hearing was held before Magistrate Hershel R. Mullins at the Monongalia County Magistrate Court, where Judge Mullins granted Defendant's motion to set aside the Default Judgment until the Plaintiff properly served the Defendant. The Magistrate Judge instructed the Plaintiff that he needed to produce an itemized monetary value on his belongings in question. (ECF No. 17 at 10).

There is no indication that DOE/NETL followed up with an additional search or determination. Plaintiff made another FOIA Appeal on September 15, 2017, stating that NETL has still not issued determination letters with regards to the FOIA requests. (ECF No. 17-10). In response to this appeal on September 22, 2017, OHA informed Plaintiff that he has already appealed the May 5, 2017, determination and that because NETL withdrew that determination, stating its intention to issue a revised determination after conducting further inquiry, OHA accordingly dismissed Plaintiff's May 5, 2017, appeal. (ECF No. 17-10 at 2). OHA expressed that they had spoken with NETL, and that NETL has not issued a revised determination letter for the request, and thus, it has not yet denied a request for records in whole or in part, and the circumstance for an administrative appeal do not yet exist. (ECF No. 17-10 at 2). Since the DOE had not issued a final determination for these requests within the statutory time limit, OHA

concluded that Plaintiff may be deemed to have exhausted his administrative remedies and may proceed with this matter in federal district court. (ECF No. 17-10 at 2).

On November 6, 2017, Plaintiff filed this civil action in this Court against Defendants, Grace Bochenek, Susan Malie and Isabel Cotero, citing 5 USC § 552(a)(6)(C)(i) and alleging violations of 18 U.S.C. §§ 21, 1701 and 1702. (ECF No. 1). Defendants filed the pending "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim" on January 8, 2018. (ECF No. 11). Plaintiff filed a response in opposition to the motion on January 22, 2018. (ECF No. 15). The undersigned held a hearing on the pending motion on February 8, 2018. (ECF No. 29).

## II. Defendants' Motion to Dismiss

In their motion to dismiss, Defendants moved that Plaintiff's Complaint be dismissed arguing the Court lacks subject matter jurisdiction and the Complaint failed to state a claim upon which relief can be granted (ECF No. 11). Specifically, Defendant argues that (1) Plaintiff failed to show that the United States waived its sovereign immunity and thereby consented to be sued; (2) Plaintiff's demand for judgment does not reflect a request for documents pursuant to the Freedom of Information Act (FOIA), 5 US.C. § 552(a); (3) civil relief cannot be based upon the criminal statutes that Plaintiff cited in the Complaint; and (4) the Complaint does not request the provision of documents pursuant to the FOIA, 5 U.S.C. § 552(a). (ECF No. 12).

## III. Plaintiff's Response

In response, Plaintiff largely provided a rendition of the facts of the case, highlighting contradictory statements made by NETL, and alleging Defendants have used various tactics to delay the progression of this case. Specifically, in response to Defendants' jurisdictional argument, Plaintiff asserted he has exhausted his administrative remedies concerning his FOIA

7

request, as the OHA office informed him that because the DOE did not issue a final determination regarding his requests, within the statutory time limit, he may be deemed to have exhausted his administrative remedies and may proceed with the matter in federal court. (ECF No. 17 at 13).

## IV. Discussion

### A. Motion to Dismiss

#### 1. Federal Rule of Civil Procedure 12(b)(1)

When a dismissal motion raises a challenge to the court's jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the burden of proving subject matter jurisdiction is on the plaintiff. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Richmond Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To help determine whether jurisdiction exists, courts must look to the plaintiff's allegations as mere evidence on the issue, and may consider evidence outside the pleadings. Richmond, 945 F.2d at 768; Adams v. Baia, 697 F.2d 1213, 1219 (4th Cir. 1982). The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Richmond, 945 F.2d at 768.

#### 2. Federal Rule of Civil Procedure 12(b)(6)

When a dismissal motion raises a challenge to the sufficiency of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all the factual allegations in the complaint as true. Zak v. Chelsea, 780 F. 3d 597, 601 (4th Cir. 2015)(citation omitted). The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550

8

U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . to one that is 'plausible on its face' . . . rather than merely 'conceivable.'" Id. at 570.

**B.  Pro Se Pleadings**

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97 (1976).  Moreover, "a *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Id. (internal quotation marks omitted). However, under this standard, a *pro se* plaintiff must still plead facts sufficient to state a plausible claim for relief.  Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  Nonetheless, a *pro se* complaint should be liberally construed to allow the development of a potentially meritorious case.  See Hughes v. Rowe, 449 U.S. 5 (1980) (noting complaint possessing facts that were not meritless was adequate to "at least require some responses from respondents); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice").

**C.  Subject Matter Jurisdiction**

Federal courts lack the authority to adjudicate a case absent subject matter jurisdiction. Basic statutory grants of federal court subject-matter jurisdiction are contained in 28, U.S.C. §§ 1331 and 1332.  Arbaugh v. Y&H Corp, 546 U.S. 500, 501 (2006).  Section 1331 provides for

9

federal question jurisdiction, which is properly invoked by the plaintiff when the plaintiff pleads a colorable claim "arising under the Constitution, laws, or treaties of the United States." Id. (citing Bell v. Hood, 327 U.S. 678, 681-685 (1946)); MotJuste Tirade of Vim Andre Juste v. Brennan, 16 F. Supp. 3d 716, 725–26 (N.D.W. Va. 2014).  Section 1332 provides for diversity of citizenship jurisdiction, which is properly invoked by the plaintiff when the plaintiff presents a claim between parties of diverse citizenship that exceeds $75,000, the current required jurisdictional amount. Arbaugh, 546 U.S. at 501.

Federal courts lack federal question jurisdiction under the well-pleaded complaint rule when the federal question fails to appear on the face of the complaint. MotJuste Tirade of Vim Andre Juste, 16 F. Supp.3d at 25 (citing Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir.2001)) (citation omitted).  Moreover, federal question jurisdiction "may not be premised on the mere citation of federal statutes." Id. (quoting Weller v. Dep't of Soc. Servs. for City of Balt., 901 F.2d 387, 391 (4th Cir.1990)).

Here, Plaintiff's primary request is the return of his personal belongings.  Plaintiff cites three criminal statutes and the Freedom of Information Act, 5 U.S.C. Section 552(a)(6)(C)(i) for the basis for federal question jurisdiction.  After liberally construing the Complaint, the undersigned will view the Complaint as alleging various theories of relief.  As such, the undersigned is of the opinion that an action brought under FOIA may be considered by the Court under federal question jurisdiction and will be addressed further below.  However, none of the criminal statues cited by Plaintiff, neither the Federal Tort Claims Act (FTCA) nor the Administrative Procedure Act can serve as a basis for jurisdiction in this case.

1. **Jurisdiction Pursuant to Criminal Statutes**

Here, Plaintiff alleges Defendants acted unlawfully by violating 18 U.S.C. § 21 – Stolen or Counterfeit Nature of Property for Certain Crimes Defined, 18 U.S.C. § 1702 – Obstruction of Correspondence, and 18 U.S.C. § 1701 – Obstruction of Mails Generally.  The criminal statues cited by Plaintiff cannot serve as a basis for jurisdiction.  A private cause of action may arise from a criminal statue only when there is a "statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." Cort v. Ash, 422 U.S. 66, 79 (1975). See also, Gonzalez v. United States, EP-14-CV-263-PRM, 2015 WL 13345624, at *6 (W.D. Tex. Sept. 14, 2015), aff'd, 681 Fed. Appx. 310 (5th Cir. 2017) (concluding the provisions of 18 U.S.C. §§ 1701-09 do not provide for a private cause of action).  Here, there is no indication that the criminal statutes cited by Plaintiff give rise to civil liability or authorize a private right of action, as they appear to be purely "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind [is] available." Cort, 422 U.S. at 80.  Consequently, the Court cannot exercise subject matter jurisdiction over these alleged criminal violations and Plaintiff is not entitled to relief on these claims.

Moreover, to the extent that Plaintiff is requesting a criminal prosecution, Plaintiff has no constitutional right to do so.  See Lina R.S. v. Richard D., 410 U.S. 614, 619 (1973) (stating "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

2. **Monetary Relief Pursuant to the Federal Tort Claims Act[1]**

To the extent plaintiff seeks monetary compensation for the items left in his former office, such claims are governed by the Federal Tort Claims Act (FTCA).  The FTCA effects a

---

[1] This section, "Monetary Relief Pursuant to the Federal Tor Claims Act," and the next section, "Injunctive Relief Pursuant to the Administrative Procedure Act," were also addressed in the Report and Recommendation (ECF No. 20) in 1:17cv216.

limited waiver of the United States' sovereign immunity. The FTCA subjects the United States to liability for tortious conduct of its employees. 28 U.S.C.A. §2674 (West). Pursuant to its provisions, the government may be held liable for injury to or loss of property caused by the negligent or wrongful act or omission of any government employee acting within the scope of his or her employment. Id. Under the Act, injunctive relief is not available. Rather, an award is limited to compensatory money damages. Id. However, prior to suing the United States, the plaintiff must first give the appropriate federal agency the opportunity to resolve the claim. Id. See 28 U.S.C. §2675(a) (stating "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail," an action shall not be instituted against the United States for money damages for loss of property or personal injury). Additionally, "[a] tort claim against the United States shall be ***forever barred*** unless it is presented in writing to the appropriate Federal agency within ***two years*** after such claim accrues or unless action is begun within six months after" the agency mails notice of denial of the claim. Id. 28 U.S.C. § 2401(b) (emphasis added).

During the hearing, Plaintiff stated that he requested return of his property in several different ways. He also stated that NETL never indicated or advised him, in any manner, that his requests required a SF-95 form. While written notice of the administrative tort claim must be presented to the appropriate government agency, and the standard method of notice is by the SF-95 form, use of the SF-95 form is not mandatory. Any written notice that contains the required elements of notice to the agency will suffice. See William v. United States, 693 F.2d 555 (5th Cir. 1982) (stating the form is not important "as long as the agency is somehow informed of the fact and amount of the claim within the two year period prescribed by § 2401(b)"). Plaintiff's

phone calls and letters are an obvious effort to start dialogue with NETL regarding the matter. However, the communications did not include a claim for a sum certain. Because Plaintiff has not presented an administrative claim to the Department of Energy, National Energy Technology Laboratory, the appropriate agency, nor has the Department of Energy, National Energy Technology Laboratory denied such a claim, if Plaintiff seeks monetary damages, the Court must dismiss Plaintiff's case against the United States for lack of subject matter jurisdiction.

3. **Injunctive Relief Pursuant to the Administrative Procedure Act**

To the extent that Plaintiff's complaint could be read as a request for injunctive relief in the form of the return of his property, the FTCA would not be an adequate remedy, supra IV.C. 2. Neither would Plaintiff be permitted to seek injunctive relief pursuant to 5 U.S.C. § 702 of the Administrative Procedure Act (APA). The statute provides both a cause of action and a waiver of sovereign immunity. However, the statute is limited to claims in which a plaintiff has suffered "a legal wrong because of agency action, or [been] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The term "agency action" is defined as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). To obtain review under § 702, a plaintiff must (1) identify some "final agency action" to be reviewed[2], and (2) "show that he has 'suffered legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 872 (1990). To be a "final agency action" under the APA, two requirements must be satisfied: "'First, the action must mark the consummation of the agency's decision making process-it must not be of a merely tentative or interlocutory nature. And second,

---

[2] See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.")

the action must be one by which rights or obligations have been determined or from which legal consequences will flow.'" Golden & Zimmerman, LLC v. Domenech, 599 F.3d 426, 432 (4th Cir. 2010) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted). See also, Franklin v. Massachusetts, 505 U.S. 788, 797 (1992) (stating "[t]he core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties").

Here, while Plaintiff provided evidence of dialogue between he and NETL, Plaintiff never filed an administrative grievance with the agency. Therefore, NETL has not been given the opportunity to review such a claim and there has been no "final agency action." As such, Plaintiff is not entitled to seek injunctive relief pursuant to 5 U.S.C. § 702.

### 4. Freedom of Information Act

Construing Plaintiff's complaint liberally, the Court finds that Plaintiff may proceed in federal court under 5 U.S.C. section 552(a)(6)(C)(i). The Freedom of Information Act, 5 U.S.C. § 552 provides that, subject to certain enumerated exemptions, "federal agencies generally must make their internal records available to the public upon request." Coleman v. Drug Enforcement Admin., 714 F.3d 816 (4th Cir. 2013) (citing 5 U.S.C. § 552(a)(3)(A). As recognized by the Supreme Court, disclosure pursuant to FOIA "shines a light on government operations 'to check against corruption and to hold the governors accountable to the governed.'" Id. (quoting NRLB v. Robbins Tire &Rubber Co., 437 U.S. 214 242 (1978).

FOIA expressly requires that an agency receiving a request for information

(i) Determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor . . . [and of] the right of such person to appeal to the head of the agency . . . [of any adverse determination]; and

> (ii) Make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal.

5 U.S.C. § 552(a)(6)(A)(i), (ii). However, if the agency fails to comply with the applicable time limit provisions of the FOIA statute, a person making a request to an agency for records, "shall be deemed to have exhausted his administrative remedies" with respect to such request, as long as the agency has not cured its violation by responding before the person making the request files suit. Coleman, 714 F.3d at 80 (citing 5 U.S.C. Section 552(a)(6)(C)(i); Pollack v. Dep't of Justice, 49 F.3d 115, 119 (4th Cir. 1995)).

In this case, to date, NETL has not issued final determinations within the statutory time limit for the following six FOIA requests submitted by Plaintiff: (1) HQ-2017-0833-F/NETL-2017-01017-F, (2) HQ-2017-00890-F/NETL-2017-01016-F, (3) HQ-2017-01070-F/NETL-2017-01080-F, (4) HQ-2017-00946-F/NETL-2017-01081-F (5) HQ-2017-01347, and (6) HQ-2017-01348-F. (ECF No. 17-10 at 2). Accordingly, Plaintiff is deemed to have exhausted his administrative remedies for those FOIA requests. Because no evidence showing NETL provided Plaintiff with revised fee determinations for FOIA requests (1) HQ-2017-01069-F/NETL-2017-01141-F, (2) HQ-2017-01268-F/NETL-2017-01260-F and (3) HQ-2017-01284-F/NETL-2017-01308-F, the undersigned further finds Plaintiff is deemed to have exhausted those FOIA requests as well.

Liberally construing Plaintiff's Complaint, the undersigned is of the opinion that Plaintiff seeks an order from the Court compelling NETL to disclose the documents Plaintiff requested in HQ-2017-00946-F/NETL-2017-01081-F. (ECF No. 1 at 3 ¶4). Because Plaintiff is deemed to have exhausted his administrative remedies, the undersigned accordingly finds Plaintiff may proceed with his FOIA request claim.

The claim under FOIA however, must proceed against NETL. Because the undersigned finds the suit against Defendant Bochenek was instituted because she is the Director of NETL and the Complaint does not appear to seek to impose personal liability upon her, the undersigned finds she is in fact being sued in her official capacity and thereby is a suit against NETL. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting "[o]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")

### V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (ECF. No. 11) be **GRANTED IN PART** and **DENIED IN PART**. More specifically, the undersigned **RECOMMENDS** the following:

1. Plaintiff's claims against Defendants for alleged violations of criminal statues 18 U.S.C. §§ 21, 1701 and 1702 shall be **DISMISSED**.
2. Defendants' request to dismiss Plaintiff's claim brought under the Freedom of Information Act (FOIA) shall be **DENIED.**
3. The National Energy Technology Laboratory shall be substituted as Defendant in place of Dr. Grace M. Bochenek.
4. All claims against Dr. Grace M. Bochenek, Susan Malie and Isabel Cotero shall be dismissed.
5. Within thirty days of the entry of this report and recommendation NETL is directed to respond the Plaintiff's FOIA claim concerning the following requests:
    a. HQ-2017-00946-F/NETL-2017-01081-F,

    **b.** HQ-2017-0833-F/NETL-2017-01017-F,

    **c.** HQ-2017-00890-F/NETL-2017-01016-F,

    **d.** HQ-2017-01070-F/NETL-2017-01080-F,

    **e.** HQ-2017-01347,

    **f.** HQ-2017-01348-F,

    **g.** HQ-2017-01069-F/NETL-2017-01141-F,

    **h.** HQ-2017-01268-F/NETL-2017-01260-F and

    **i.** HQ-2017-01284-F/NETL-2017-01308-F.

Any party within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. §636(b)(1). United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to forward a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 21st day of February 2018.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE