**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

AYYAKKANNU MANIVANNAN,

        **Plaintiff,**

v.                          **Civil Action No. 1:17-CV-192**
                                     **(JUDGE KLEEH)**

DEPARTMENT OF ENERGY
(National Energy Technology Laboratory),

        **Defendants.**

## REPORT AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

        This matter before the undersigned is pursuant to the *pro* se Plaintiff, Ayyakkannu Manivannan's "Note and Clarification" (ECF No. 60), which has been construed as a Motion to Compel, and Defendant, Department of Energy (DOE), National Energy Technology Laboratory (NETL's) Motion for Summary Judgment (ECF No. 61). Honorable Senior District Court Judge Irene M. Keeley entered an order, referring any motions filed in this case to the undersigned for written orders or report and recommendations. (ECF No. 5).

        This case was reassigned to Honorable District Judge Thomas S. Kleeh on December 1, 2018. (ECF No. 78). A motion hearing was held before the undersigned on October 30, 2018. This matter is now ripe for a report and recommendation to the District Judge. For the reasons set forth herein, the undersigned **RECOMMENDS** the Defendant's Motion for Summary Judgment (ECF No. 61) be **GRANTED**, Plaintiff's "Note and Clarification", construed as a Motion to

1

Compel (ECF No. 60), be **DENIED AS MOOT** and Plaintiff's Amended Complaint (ECF No. 50) be **DISMISSED WITH PREJUDICE**.

## I.       Background and Procedural History

Plaintiff, Dr. Ayyakkannu Manivannan, is a former employee of the Defendant, United States Department of Energy (DOE) at the National Energy Technology Laboratory (NETL) in Morgantown, West Virginia. Plaintiff was placed on administrative leave on August 12, 2015, during an internal investigation into allegations against him and was forbidden from accessing NETL property or spaces. (ECF No. 12 at 4). This internal investigation revolved around allegations of an improper relationship with an intern, harassment, and unlawful use of computer that ultimately led to a criminal case against Plaintiff in Pennsylvania state court.[1] Upon the onset of administrative leave, Plaintiff's office was secured under lock and key, and controlled by the NETL security personnel. (ECF No. 12 at 4). No one was permitted access to the area without consultation with the NETL Office of Chief Counsel. Id.  Plaintiff tendered his resignation on June 16, 2016, which became effective on June 17, 2016.  Id. at 3.

On November 6, 2017, Plaintiff filed a civil action in this Court against Defendants, Grace Bochenek, Susan Malie and Isabel Cotero, citing 5 USC § 552(a)(6)(C)(i) and alleging violations of 18 U.S.C. §§ 21, 1701 and 1702. (ECF No. 1).  The undersigned issued a Report and Recommendation on February 21, 2018, recommending that the action be dismissed against all three defendants. (ECF No. 30). However, the undersigned further recommended that the Defendants' request to dismiss Plaintiff's FOIA claims be denied, the Department of Energy, National Energy Laboratory be substituted as Defendant and directed the NETL to respond to Plaintiff's FOIA requests. Id.

---

[1] The undersigned notes that many of Plaintiff's FOIA Requests involve documents relating to the internal investigation of Plaintiff conducted by Defendant NETL as well as NETL's communications with Centre County Prosecuting Attorney's Office and Penn State University, which were in furtherance of Plaintiff's criminal case.

The undersigned's Report and Recommendation referred to nine FOIA requests made by the Plaintiff: HQ-2017-0833-F/NETL-201701017-F, (Request 833); HQ-2017-00890-F/NETL-2017-01016-F (Request 890); HQ-2017-01070-F/NETL-2017-01080-F (Request 1070); HQ-2017-00946- F/NETL-2017-01081-F (Request 946); HQ-2017-01347 (Request 1347); and HQ-2017-01348-F, (Request 1348). The undersigned further recommended that the plaintiff be deemed to have exhausted FOIA requests HQ-2017-0169-F/NETL-2017-01141-F (Request 1069); HQ-2017- 01268-F/NETL-2017-01260-F Request 1268); and HQ-2017-01284-F/NETL-2017-01308-F (Request 1284), because there was no evidence that a revised fee letter was sent. Id. Honorable District Judge Irene M. Keeley adopted the undersigned's report and recommendation by order (ECF No. 52) on May 21, 2018, and substituted Department of Energy, National Energy Technology Laboratory as Defendant, thereby allowing Plaintiff to pursue his complaints regarding FOIA requests.

Following a status conference, by order on April 13, 2018, the undersigned directed the Plaintiff to file an Amended Complaint, including the FOIA requests for which he had exhausted his administrative remedies on or before April 26, 2018. (ECF No. 48). The Plaintiff filed his Amended Complaint on April 25, 2018 (ECF No. 50) and included every FOIA request he had made to Defendant, Department of Energy (DOE), National Energy Technology Laboratory (NETL). However, the Plaintiff did not reference whether administrative remedies had been exhausted for each of the FOIA requests contained in his Amended Complaint and included repetitive requests as well as requests for which required fees had not been paid as required. The Defendant, DOE (NETL) filed an Answer to Plaintiff's Amended Complaint on May 10, 2018 (ECF No. 51) prior to the District Court's Order Adopting Report and Recommendation that substituted DOE (NETL) as Defendant and

allowed Plaintiff to pursue his complaints regarding FOIA requests.

Thereafter, Plaintiff filed a "Note and Clarification" on August 28, 2018 (ECF No. 60), which has been construed as a Motion to Compel, requesting the Court to compel the Defendant to respond to his FOIA requests. The Defendant filed a Motion for Summary Judgment and an accompanying Memorandum in Support with several attached exhibits on September 6, 2018 (ECF Nos. 61 and 62). The undersigned issued a Roseboro Notice to the *pro se* Plaintiff on September 7, 2018 informing him of his right to respond to the Motion for Summary Judgment (ECF No. 63). Plaintiff filed his Response to the Motion along with several exhibits on September 28, 2018 (ECF No. 69). The Defendant filed a Reply to Plaintiff's Response on October 11, 2018. (ECF No. 70). A motion hearing was held before he undersigned on October 30, 2018, at which the parties appeared in person and presented arguments regarding the pending motions.

## II.    Contentions of the Parties

### A. Plaintiff's Amended Complaint

Plaintiff's Amended Complaint raises concerns regarding the responsive efforts of Defendant DOE (NETL) to Plaintiff's numerous requests pursuant to the Freedom of Information Act (FOIA). In his Amended Complaint, Plaintiff states that his "major goal is to obtain the documented truth through the opportunity" of his "FOIA request." (ECF No. 50 at 1). Plaintiff states that he "is concerned that the purpose of delay by DOE is to cause his statute of limitations to protest injustice to expire." Id. Plaintiff claims that he had "exhausted administrative remedies long ago and most certainly as of April 26, 2018." Id.

Regarding Plaintiff's FOIA "Request 1070", Plaintiff stated in his Amended Complaint that he objected to the "Agency's use of Exemptions 5 & 6 to withhold requested information."

(ECF No. 50 at 2). Specifically, Plaintiff objected to the Agency "claiming pre-decisional and deliberative actions to justify withholding records" and to the Agency's claim "of destroying records." Id. The Plaintiff further stated he objected to the Agency's "withholding of information that has been shared, circulated, and discussed with non-Federal entities" and to the Agency's right "to withhold internal information that has been used in a post-decisional sense." Id. The Plaintiff stated he "objects to Agency's claim of lawyer and client privilege for withholding information" as well as the "Agency withholding post-decisional records that, include but are not limited to a) conclusions of an internal investigation, b) facts of the personal action "Notice of Proposed Removal (NPR)," c) evidence justifying the NPR that otherwise suggests false fabrication, d) documents justifying negative comments on employee personal action SF-50 form, e) documents verifying the report to Congressional persons that my personal property was returned." Id.

Plaintiff further stated that he objected to the Agency's "claim that withheld/redacted information was pre-decisional" and to the "Agency's claim that the records requested contain information of a 'candid,' and/or 'deliberative' nature." Id. at 3. Plaintiff claims that the Agency is "misusing 'privilege' as a basis to hide its 'unprofessional behavior.'" Id. Plaintiff states he "objects to Agency's claim of confidentiality" and the claim that "there is a privacy interest in the information withheld." Id. Plaintiff claims the Agency has "failed to prove that any guiltless person(s) would be harmed from release of the information requested." Id.

Plaintiff's Amended Complaint then went on to provide a "Status of the FOIAs" claiming that the Agency's response to the FOIA requests had been "inadequate" and that "evidentiary records are being hidden or have been destroyed." Id. Plaintiff then provided a summary of the extensive and voluminous amount of information he has requested pursuant to all of the FOIA

requests he has submitted to the Defendant. Due to the voluminous nature of the information the Plaintiff has requested, the contents of these requests will not be summarized herein. (*See* Pl's Amended Compl, ECF No. 1, at 3-20). In summary, regarding all of Plaintiff's FOIA requests, Plaintiff indicated he was concerned and objected to the information being redacted or withheld pursuant to exemptions five and six provided under 5 United States Code § 552(b)(5)-(6) allowing for withholdings due to attorney-client privilege, attorney work product, and governmental deliberative process privilege. Plaintiff further raised concerns that information requested was being improperly destroyed or hidden from Plaintiff. *See* Id.

### B.  Defendant's Motion for Summary Judgment

The Defendant states that the "nine FOIA requests" the undersigned referenced in his report and recommendation (ECF No. 30) are the "subject of this lawsuit." (Def's Memo in Supp., ECF No. 62, at 4). The Defendant states that a letter dated "June 26, 2017" sent to Plaintiff by Defendant NETL "advised the plaintiff that in view of the voluminous amount of information 'on the same or closely related subject' as well as the similarity and repetitive nature of the requests for the same information, NETL decided to aggregate requests 833, 890, 946, 1069, 1070, 1268 and 1284." Id.

The letter provided to Plaintiff by Defendant "further estimated the cost to search for responsive records would be over $7,000.00 thus requiring prepayment before a search could begin." Id. (citing the Declaration of Ann C. Guy, attached as Government Exhibit 1 (ECF No. 62-1, at 10 ¶ 28) (*Guy Decl.*), Ex. 5 (ECF No. 62-6)). The Plaintiff "appealed that determination on July 5, 2017." Id. (citing *Guy Decl.*, Ex. 6 (ECF No. 62-7)). The Defendant states that by a "**Decision and Order** issued by the United States Department of Energy Office of Hearings and Appeals, (OHA), dated August 7, 2017 plaintiff could not be assessed fees for 4 of the 7 requests

which included requests 833, 890, 946 and 1070." <u>Id.</u>  (citing *Guy Decl.*, ECF No. 62-1, at 10-11, ¶ 30).

As a result, the Defendant states that "NETL issued a new fee determination on September 22, 2017, pursuant to OHA's Order denying the fee waiver as to requests 1069, 1268 and 1284." (Def's Memo in Supp., ECF No. 62, at 4). This letter required plaintiff to make a prepayment of an estimated "$5,000.00 in search fees . . . prior to the initiation of the search." <u>Id.</u> at 5. Due to nonpayment, the Defendant contends that these requests "were closed by NETL without taking any action as a result of plaintiff's failure to pay the assessed fees. Likewise, no fees were paid for the newer search requests 1347 and 1348, resulting in their closure." <u>Id.</u> (citing *Guy Decl.*, at 11, ¶ 31, Ex. 8 and 66 (ECF No. 62-9 and 62-67)). Therefore, the Defendant addresses the search and action taken by Defendant DOE (NETL) regarding the four remaining FOIA requests (Request 833, 890, 946, and 1070) "for which OHA ruled that no fees could be assessed" in its Memorandum in Support of Motion for Summary Judgment. (ECF No. 62 at 5-9).

### 1.  Plaintiff's FOIA Request 833

Regarding Plaintiff's FOIA Request 833, Defendant contends that "NETL responded in a detailed determination letter on October 6, 2017, releasing 42 pages with 1 redaction supported by Exemption 5." <u>Id.</u> at 5. Thereafter, Plaintiff appealed that determination letter filed on October 12, 2017, and "OHA issued a **Decision and Order** on November 2, 2017, finding that NETL performed an adequate search for all but 2 items of the 19 item request." <u>Id.</u> (citing *Guy Decl.*, at 12, ¶ 34, Ex. 12 (ECF No. 62-13)). The Defendant states that the "new determination letter dated November 22, 2017, produced 66 pages along with email communications, the resignation letter and the SF50s, with some information redacted pursuant

to Exemption 5." (Def's Memo in Supp., ECF No. 62, at 5). Defendant states that Plaintiff then "appealed to OHA on November 29, 2017, which resulted in a **Decision and Order** dated January 11, 2018, wherein the OHA addressed both requests 833 and 890, partially granting plaintiff's appeals." Id. (citing *Guy Decl.*, at 12, ¶ 35 – 36, Ex. 15 (ECF No. 62-16)).

Defendant states that NETL then "sent a redetermination letter addressing the OHA concerns on January 25, 2018, releasing emails and further information required by the January 11 Order." Id. (citing *Guy Decl.*, Ex. 17 (ECF No.). Plaintiff appealed this redetermination letter on January 29, 2018. (Def's Memo in Supp, ECF No. 62, at 5) (*Guy Decl.*, ECF No. 62-1, at 13, ¶ 38). Defendant states that NETL issued a new redetermination letter on February 7, 2018, "releasing 90 pages of documents with 9 redactions pursuant to Exemption 5." (Def's Memo in Supp., ECF No. 62, at 5) (citing *Guy Decl.*, at 13, ¶ 39, Ex. 19 (ECF No. 62-20)).

The Defendant states that Plaintiff again appealed on February 8, 2018, "complaining of improper redactions" and following this appeal the "OHA issued a **Decision and Order** dated February 12, 2018, denying plaintiff's appeal on the basis that NETL was in full compliance with their Order dated January 11, 2018." (Def's Memo in Supp., ECF No. 62, at 5-6). As a result, the Defendant contends that Plaintiff's FOIA Request 833 was closed and because "plaintiff's appeal was denied, his administrative remedies were exhausted, and he was permitted to seek judicial review."

## 2.  **Plaintiff's FOIA Request 890**

The Defendant asserts through the declaration of Ann C. Guy (*Guy Decl.*) that a detailed search was undertaken regarding this request and as a "result of the search, 7 documents were released to the plaintiff and 24 documents were withheld pursuant to

Exemption 5 of the FOIA as explained in the determination letter dated May 19, 2017." (Def's Memo in Supp., ECF No. 62, at 6) (citing *Guy Decl.*, at 14-15, ¶ 42, Ex. 25 – 26 (ECF No. 62-26, 27)). Plaintiff filed an appeal "dated June 6, 2017" and "insisted that NETL failed to release video/audio tape records which were used during the investigation." (Def's Memo in Supp., ECF No.  62, at 6). The Defendant states that the "audio/video tapes referred to were destroyed during the normal course of business as is fully explained in *Guy Decl.* para. 64, Ex. 57." Id.

The Defendant states that the "OHA remanded the request to NETL on June 16, 2017, which resulted in the release of the plaintiff's personnel file." Id. The NETL then "issued a new determination letter on August 7, 2017 including the previously redacted information." Id. (citing *Guy Decl.*, at ¶ 42, Ex. 25 – 26 (ECF No. 62-26, 27)). The Defendant claims that the "Plaintiff was dissatisfied with the new determination letter dated November 3, 2017 and appealed to OHA on November 29, 2017." Id. (citing *Guy Decl.*, at ¶ 33, 34, Ex. 27 – 28 (ECF No. 62-28, 29)). OHA then "issued a **Decision and Order** dated January 11, 2018, which addressed request 833 as well as request 890." (Def's Memo in Supp., ECF No.  62, at 6). In its Decision, the "OHA held that NETL's search was not adequate and that several redactions pursuant to Exemption 5 were not proper." Id.

As a result of the OHA's findings, NETL sent a second redetermination letter to the Plaintiff "on January 25, 2018 releasing the previously redacted communications pursuant to OHA's **Decision and Order**." Id. (citing *Guy Decl.* at ¶ 45, Ex. 29 – 30 (ECF No. 62-30, 31)). The Plaintiff appealed the second redetermination letter to the OHA on January 29, 2018 and the appeal was "dismissed after NETL agreed to withdraw the determination letter and reissue another." (Def's Memo in Supp., ECF No.  62, at 6). Following their withdrawal of the second

redetermination letter, the NETL then issued a third redetermination letter on January 30, 2018, "releasing additional portions of emails that had previously been redacted." Id. at 6-7 (citing *Guy Decl.*, ¶ 46, Ex. 31 – 33 (ECF No. 62-32, 33, 34)).

Plaintiff appealed again on January 31, 2018, but his appeal "was dismissed by OHA because NETL had withdrawn its last redetermination agreeing to conduct an additional review of the responsive documents." (Def's Memo in Supp., ECF No.  62, at 7). The Defendant states that NETL then issued a "fourth determination letter dated February 27, 2018" in which NETL "redacted and/or segregated 157 pages of documents in compliance with OHA's **Decision and Order** dated January 11, 2018." Id. (citing *Guy Decl.*, ¶ 47, Ex. 35 – 36 (ECF No. 62-36, 37)). Plaintiff filed yet another appeal on March 1, causing NETL to issue yet another determination letter "dated March 8, 2018." Id. (citing *Guy Decl.*, Ex. 38 (ECF No. 62-39)). In this determination letter, the Defendant states NETL complied with OHA's **Decision and Order** of January 11, 2018, and "further redacted and segregated information pursuant to Exemption 5." (Def's Memo in Supp., ECF No. 62, at 7). The Defendant argues that because "plaintiff never appealed the March 8, 2018 redetermination letter to OHA", he failed to exhaust his administrative remedies. Id.

### 3.  Plaintiff's FOIA Request 946

The Defendant asserts that "Plaintiff's request 946 required searching 14 categories of records pertaining to his personal belongings as well as emails regarding work he had done while employed by NETL." Id. NETL issued an initial response to Plaintiff's request on May 5, 2017, stating no records existed "because plaintiff's request was for information rather than records or actual documents." Id. (citing *Guy Decl.*, ¶ 50, Ex. 41 (ECF No. 62-42)). Defendant states that, subsequently, all "searches were put on hold after the requests were aggregated and

a fee letter was issued" and, no search was undertaken until "OHA ruled that NETL was not permitted to charge a fee for request 946 on August 7, 2017." (Def's Memo in Supp., ECF No. 62, at 7).

The Defendant states that NETL then conducted "an exhaustive search" and that this search is "reflected in *Guy Decl.* para. 51 and 66." Id. The Defendant states that NETL issued a redetermination letter on April 11, 2018, including "approximately 689 pages with no redactions." Id. (citing Def. Ex. 44 (ECF No. 62-45)). The Defendant argues that because the Plaintiff did not appeal this redetermination letter to the OHA, he has failed to exhaust his administrative remedies with respect to Request 946. (Def's Memo in Supp., ECF No.  62, at 7).

#### 4. **Plaintiff's FOIA Request 1070**

Defendant states that Plaintiff's FOIA Request 1070 was "repetitive" because "it was one of the requests aggregated." Id. at 8. However, after the OHA decision of August 7, 2017, holding fees could not be assessed, "the processing of the request resumed." Id. The Defendant states that NETL produced "approximately 227 pages of information. . . on October 24, 2017, subject to redactions under Exemption 5." Id. (citing *Guy Decl.*, ¶ 53, Ex. 46 (ECF No. 62-47). The Plaintiff then appealed NETL's production on October 29 "on the ground that Exemption 5 did not apply to him and again asking for the video/audio tape." (Def's Memo in Supp., ECF No.  62, at 8). The Defendant states that the OHA issued a **Decision and Order** on November 29, 2017 and "granted plaintiff's appeal in part, however, noted that NETL did an adequate search for most of the items listed in plaintiff's request." Id.

Defendant states that the OHA "required NETL to do an additional search using more search terms on 2 particular items included in the request." Id. (citing *Guy Decl.*, ¶ 54, Ex. 48

(ECF No. 62-49)). Defendant states that NETL, pursuant to OHA's Order, then issued a new redetermination letter to Plaintiff on "January 4, 2018, producing 46 pages with no redactions and 91 pages with some redactions made pursuant to Exemption 5." Id. (citing *Guy Decl.*, ¶ 55, Ex. 49 (ECF No. 62-50)). The Defendant states that the Plaintiff then appealed this determination letter to "OHA on January 16, 2018, on the ground that the search was not complete, causing NETL to re-examine and issue a new determination letter on February 27, 2018, complying with the OHA Order by correctly listing and marking the exemptions used." Id. (citing *Guy Decl.*, ¶ 55, Ex. 51 (ECF No. 62-52)).

The Defendant states that Plaintiff again filed an appeal "on the ground of an inadequate search, resulting in OHA's **Decision and Order** dated March 29, 2018" which ultimately concluded that the Defendant NETL had conducted an adequate search for the records requested and further had properly redacted information under the stated Exemptions, Exemptions 5 and 6 and thereby denied Plaintiff's appeal. Id. at 8-9 (citing *Guy Decl.*, ¶ 56, Ex. 53 (ECF No. 62-54)). As a result, the Defendant contends that Plaintiff has properly exhausted his remedies with regard to FOIA Request 1070 and may seek judicial review.

### III.    Defendant's Arguments

With this background in mind, the Defendant makes several arguments regarding Plaintiff's FOIA requests. First, Defendant argues that the agency has conducted an adequate search as required under the law for all responsive records encompassed within Plaintiff's numerous FOIA requests. (Def's Memo in Supp., ECF No.  62, at 10). Defendant states that the adequacy of its search for responsive records is clearly supported by the submitted affidavits and "non-conclusory declarations of Anne C. Guy, Paralegal Specialist and NETL's Freedom of Information Act Officer, Mark T. Hunzeker, Attorney-Advisor for the NETL, and Alexander

C. Morris, Freedom of Information Act Officer in the Office of Information Resources for DOE headquarters." Id. at 11.

The Defendant contends that it not only conducted detailed searches and made all good faith efforts to locate and provide responsive records to Plaintiff's FOIA Requests, but also further complied with all **Decision and Orders** of the United States Department of Energy Office of Hearings and Appeals (OHA) each time Plaintiff appealed the determination letters issued to him by the Defendant. The Defendant contends that it conducted further responsive searches and released additional documents as directed by the OHA and that this is supported by the OHA's Decisions finding the Defendants' searches to be adequate as well as the affidavits and declarations submitted by the Defendant detailing the searches performed and documents released. Id. at 10-15. As such, the Defendant argues that it conducted adequate searches for Plaintiff's FOIA Requests 833, 1070, and one part of Request 1284 that was directed to the Department of Energy (DOE) as opposed to NETL. Id. at 12-15.

The Defendant further argues that NETL properly applied and asserted exemptions to redact information pursuant to 5 U.S.C. §552(b)(5) – (b)(6). Id. at 15. The Defendant asserts that it applied FOIA Exemption 5 for attorney work product, attorney – client privilege, and the governmental deliberative process privilege. Id. The Defendant similarly argues that NETL properly applied and asserted exemptions to redact information pursuant to FOIA Exemption 6 for sensitive information that relate to individuals' personal privacy. Id. at 17-18.

Finally, Defendant argues that Plaintiff failed to exhaust administrative remedies regarding Requests 946 and 890 because of Plaintiff's failure to appeal the redetermination letters to the OHA after being issued to the Plaintiff by the Defendant NETL Id. at 18-23. Defendant further argues that "constructive exhaustion does not apply". Id. at 24. Defendant

quotes from the undersigned's Report and Recommendation issued on February 21, 2018 (ECF No. 30, at 15) which stated the law regarding when an individual's administrative remedies are deemed to be exhausted for purposes of a FOIA Request. The undersigned noted that, pursuant to Coleman v. Drug Enforcement Administration, 714 F.3d 816, 824 (4th Cir. 2013) and Pollack v. Department of Justice, 49 F.3d 115, 119 (4th Cir. 1995), "a person making a request to an agency for records, 'shall be deemed to have exhausted his administrative remedies' with respect to such request, as long as the agency has not cured its violation by responding before the person making the request files suit." (ECF No. 30, at 15).

The Defendant argues that the Plaintiff's suit began either with the filing of his Amended Complaint on April 25, 2018, or with the entry of the Order Adopting the Report and Recommendation that substituted NETL as Defendant on May 21, 2018. (Def's Memo in Supp., ECF No. 62, at 24). The Defendant argues that NETL had responded and "the administrative process was well underway before this suit was filed." Id. Therefore, the Defendant argues that constructive exhaustion does not apply, and Plaintiff has failed to exhaust his administrative remedies.

## IV.    **Plaintiff's Response**

Plaintiff filed his Response in Opposition to Defendant's Motion for Summary Judgment on September 28, 2018. (ECF No. 69). Plaintiff argues that he has exhausted his administrative remedies with the agency Defendant because the "Agency failed to produce requested records within the required 20 days." (Pl's Resp., ECF No. 69, at 1).

Plaintiff further disputes the Defendant's contention that audio and video tapes requested by the Plaintiff were destroyed in the normal course of business. Plaintiff claims this is not the normal course of business and must be explained. Id. at 3.

Plaintiff contends that redacted information provided to him was not proper under FOIA Exemption 5 as asserted by the Defendant. Id. Plaintiff further argues that Defendant's reasons for why information was redacted or withheld under Exemption 5 has not been adequate or proper. Id. at 3-10. Plaintiff also argues that the Defendant's use of Exemption 6 to redact and withhold information responsive to his FOIA Requests is similarly insufficient and the government has not met its burden to justify the withholding. Id. at 11, 13-14. Plaintiff states that he has not received any response from DOE, NETL to FOIA Requests 1347, 1348, 1759, or 78 Id. at 23. The Plaintiff requests the Court to deny Defendant DOE, NETL's Motion for Summary Judgment and to grant the Plaintiff summary judgment and order the DOE to respond and produce all redacted and withheld records requested under all of Plaintiff's FOIA Requests. Id. Plaintiff further requests the Court conduct an *in camera* review of the redacted or withheld documents to determine if such withholdings by the Defendant were proper.

## V.    Defendant's Reply

Defendant filed a Reply on October 11, 2018. (ECF No. 70). The Defendant states that Plaintiff's failure to pay fees stopped and closed any response to FOIA Requests 1069, 1268, 1284, 1347, 1348, 78, and 1759. (Def's Reply, ECF No. 70, at 1). Defendant states that "Plaintiff's request for a fee waiver was denied" on August 7, 2017 and Defendant NETL "issued a revised fee determination on September 22, 2017 requiring $5,000.00 in search fees be paid prior to initiation of the search." Id. at 1-2 (citing *Guy Decl*. at ¶ 30 -31, Ex. 7 – 8 and 66, (ECF No. 62-8, 9, 67)). Defendant states that because Plaintiff "failed to respond or pay any of the assessed fees, no further search was undertaken by NETL." Id.

In their Reply, Defendant further reiterates the arguments from their Memorandum in Support of Motion for Summary Judgment, stating Plaintiff failed to exhaust administrative

remedies as to Requests 890 and 946 for failure to appeal Defendant NETL's redetermination letters. (Def's Reply, ECF No. 70, at 2-5). Defendant further states that an adequate search was performed, and exemptions were properly asserted regarding Requests 833 and 1070 as set forth by the Declaration of Ann C. Guy. Id. at 5-7. Defendant further argues that Plaintiff's Opposition contains complaints that are not cognizable under FOIA. Id. at 7-10.

## VI.    Legal Standard

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

On a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C.Cir. 1978); Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C.Cir. 2001) (quoting Goland). "A defendant agency has the burden of establishing the adequacy of its search and that any identifiable document has either been produced or is subject to withholding under an exemption." Havemann v. Colvin, 629 Fed.Appx. 537, 539 (4th Cir. 2015).

The agency may meet its burden through the production of affidavits describing the

manner in which it undertook the requested information search. *See* id. In order to invoke an exception, however, the agency's affidavits "must be relatively detailed and nonconclusory." Id. (citing Simmons v. United States Dept. of Justice, 796 F.2d 709, 711–12 (4th Cir. 1986)). The court may presume "the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." Id. (citing Bowers v. United States Dept. of Justice, 930 F.2d 350, 357 (4th Cir. 1991)). To overcome the presumption, "a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Id. (citing Miller v. United States Dept. of State, 779 F.2d 1378, 1384 (8th Cir. 1985)).

Under the Freedom of Information Act ("FOIA"), federal agencies "shall make [agency] records promptly available to any person," so long as the person's request "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). Courts have long held that "'FOIA reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" Id. (quoting Dept. of Defense v. FLRA, 510 U.S. 487, 494 (1994)). Notably, the FOIA does not require an agency to create or retain any document; rather, it only "'obligates them to provide access to those which it in fact has created and retained.'" Turner v. U.S., 736 F.3d 274, 283 (4th Cir. 2013) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)).

There are, however, certain enumerated exemptions from the FOIA's mandate to disclose. *See* 5 U.S.C. § 522(b)(1)-(9); New Hampshire Right to Life v. Dep't of Health and Human Svcs., 13 S. Ct. 383 (2015). The Court must decide as a matter of law whether a document falls within one of the exemptions. Wickwire Gavin, P.C. v. U.S. Postal Service, 356 F.3d 588, 591 (4th Cir. 2004). In addition, courts must construe the FOIA's exemptions narrowly and place the burden on the agency to show that its exemptions are proper. Id. (citing

5 U.S.C. § 552(a)(4)(B); <u>J.P. Stevens Co. v. Perry</u>, 710 F.2d 136, 139 (4th Cir. 1983)).

## VII.   Analysis

**A.  The undersigned finds Plaintiff's failure to pay assessed fees closed Plaintiff's FOIA Requests 1069, 1268, 1284, 1347, 1348, 78 and 1759.**

FOIA "commands that a federal agency 'promptly' make records available upon a request which 'reasonably describes such records and . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" <u>Pollack v. Department of Justice</u>, 49 F.3d 115, 118 (4th Cir. 1995) (quoting 5 U.S.C. § 552(a)(6)(A) & (B)). Further, FOIA "requires the requester to follow each agency's rules for requesting, reviewing and paying for documents. *See* 5 U.S.C. § 552(a)(3)(B). Each agency is authorized "to charge a 'reasonable' amount for the direct costs of document search, duplication, and review." <u>Pollack</u>, 49 F.3d, at 119 (citing 5 U.S.C. § 552(a)(4)(A)).

Furthermore, these "fees may be estimated by the agency and demanded in advance, but only if the agency determines that the fees will exceed $250 or if the requester has previously failed to pay fees in a timely fashion." <u>Id.</u> (citing 5 U.S.C. § 552(a)(4)(A)(v)). Finally, "the agency *may refuse to continue processing the pending request* and refuse to accept any new request from that requester, until the requester makes advance payment of any fees owed plus interest." <u>Id.</u> at 120 (quoting 28 C.F.R. § 16.10(g)(2)).

Here, "Plaintiff's request for a fee waiver was denied" on August 7, 2017 and Defendant NETL "issued a revised fee determination on September 22, 2017 requiring $5,000.00 in search fees be paid prior to initiation of the search." (Def's Reply, ECF No. 70, at 1-2) (citing *Guy Decl*. at ¶ 30 – 31, Ex. 7 – 8 and 66, (ECF No. 62-8, 9, 67)). There has been no evidence submitted that would indicate Plaintiff ever paid the required search fees and therefore, the undersigned finds that Plaintiff's failure to pay the assessed fees allowed for the Defendant, NETL, to properly

refuse to continue processing Plaintiff's FOIA Requests 1069, 1268, 1284, 1347, 1348, 78 and 1759.

**B.  The undersigned finds Plaintiff has failed to exhaust his administrative remedies with respect to Requests 890 and 946 and constructive exhaustion is not applicable.**

While Defendant NETL and the OHA denied Plaintiff's request for a fee waiver with respect to several of his FOIA Requests, it was determined by a "**Decision and Order** issued by the United States Department of Energy Office of Hearings and Appeals, (OHA), dated August 7, 2017 plaintiff could not be assessed fees for 4 of the 7 requests which included requests 833, 890, 946 and 1070." (*Guy Decl.*, ECF No. 62-1, at 10-11, ¶ 30).

An agency's "failure to respond to the initial request within the initial 10-day period (plus any 10-day extension) may constitute 'constructive exhaustion.'" Pollack v. Department of Justice, 49 F.3d 115, 118 (4th Cir. 1995) (quoting 5 U.S.C. § 552(a)(6)(C); Oglesby v. United States Dept. of Army, 920 F.2d 57, at 62 (D.C. Cir. 1990)). However, pursuant to Coleman v. Drug Enforcement Administration, 714 F.3d 816, 824 (4th Cir. 2013) and Pollack v. Department of Justice, 49 F.3d 115, 119 (4th Cir. 1995), "a person making a request to an agency for records, 'shall be deemed to have exhausted his administrative remedies' with respect to such request, *as long as the agency has not cured its violation by responding before the person making the request files suit*." (emphasis added).

Here, the Plaintiff argues that his administrative remedies have been exhausted because NETL failed to respond to his FOIA requests within twenty days. Defendant argues that the Plaintiff's suit began either with the filing of his Amended Complaint on April 25, 2018, or with the entry of the Order Adopting the Report and Recommendation that substituted NETL as Defendant on May 21, 2018. (Def's Memo in Supp., ECF No. 62, at 24).

Regarding Plaintiff's FOIA Request 890, NETL issued a determination letter on May 19, 2017. *See Guy Decl*., ECF No. 62-1, ¶ 41 and Ex. 23, ECF No. 62-24. After an appeal by the Plaintiff, additional documents were released by NETL on March 8, 2018. There is no evidence to suggest Plaintiff ever appealed this decision letter to OHA. The undersigned finds that Plaintiff's suit began with the filing of Plaintiff's Amended Complaint on April 25, 2018. Because the Defendant "cured its violation by responding before the person making the request" filed suit by issuing a determination letter on March 8, 2018 that was not appealed by the Plaintiff, the undersigned finds Plaintiff has failed to exhaust his administrative remedies regarding FOIA Request 890 and constructive exhaustion does not apply.

Similarly, regarding Plaintiff's FOIA Request 946, following appeals by the Plaintiff, NETL conducted an expanded search and sent out a redetermination letter to Plaintiff on April 11, 2018, that included "approximately 689 pages with no redactions." There is no evidence to suggest Plaintiff ever appealed this decision letter to OHA. *See Guy Decl.,* ECF No. 62-1, ¶ 50 – 51, Ex. 41-44, ECF No. 62-42, 43, 44, 45. Because the Defendant "cured its violation by responding before the person making the request" filed suit by issuing a determination letter on April 11, 2018, that was not appealed by the Plaintiff, the undersigned finds Plaintiff has failed to exhaust his administrative remedies regarding FOIA Request 946 and constructive exhaustion does not apply.

## C. The undersigned finds Defendant, Department of Energy (National Energy Technology Laboratory) performed an adequate search with respect to Requests 833, 1070, and one part of Request 1284

As noted herein, on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978); Students Against Genocide v.

20

Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland). "A defendant agency has the burden of establishing the adequacy of its search and that any identifiable document has either been produced or is subject to withholding under an exemption." Havemann v. Colvin, 629 Fed.Appx. 537, 539 (4th Cir. 2015).

The agency may meet its burden through the production of affidavits describing the manner in which it undertook the requested information search. *See* id. In order to invoke an exception, however, the agency's affidavits "must be relatively detailed and nonconclusory." Id. (citing Simmons v. United States Dept. of Justice, 796 F.2d 709, 711–12 (4th Cir. 1986)). The court may presume "the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." Id. (citing Bowers v. United States Dep't of Justice, 930 F.2d 350, 357 (4th Cir. 1991)). To overcome the presumption, "a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Id. (citing Miller v. United States Dept. of State, 779 F.2d 1378, 1384 (8th Cir. 1985)).

Here, the Defendant has attached the Declaration of Ann C. Guy (*Guy Decl.*). Ann C. Guy is a Paralegal Specialist for the United States Department of Energy's (DOE's) National Energy Technology Laboratory (NETL). Ann Guy manages all FOIA requests sent to the laboratory and has held this position since December of 1991. *Guy Decl.* at ¶ 1. Guy's responsibilities have included searching for information responsive to FOIA requests, reviewing information to determine whether it is potentially exempt from release, and providing information to those who have requested it pursuant to the FOIA, 5 U.S.C. § 552. *Guy Decl.* at ¶ 2. The Declaration of Ann C. Guy clearly explains in detail the DOE, NETL system of records and how that system is searched in response to a FOIA request and personally conducted and reviewed searches for documents responsive to the Plaintiff's requests. *See generally* Id. The

declaration also explains in detail how the records were searched in response to the FOIA requests as well as the considerations made for redactions and assertions of exemptions under FOIA.

Upon a review of the Guy Declaration, the undersigned finds that Ann C. Guy is a "responsible agency official." In addition, the undersigned finds the declaration is sufficient to establish that the methods used by the Defendant to conduct FOIA searches can reasonably be expected to produce the information Plaintiff requested in this case and that the agency has acted in good faith in conducting its search. The agency has released a voluminous number of documents and information in response to Plaintiff's FOIA Requests and has fully complied with all Decisions and Orders issued by the OHA. Therefore, although Plaintiff is not satisfied with Defendant DOE, NETL's responses to his FOIA requests, the undersigned finds the Defendant's numerous searches and release of documents to Plaintiff was reasonable and adequate.

Furthermore, to the extent Plaintiff claims Defendant is hiding or destroying evidence improperly, the undersigned notes that the FOIA does not require an agency to create or retain any document; rather, it only "'obligates them to provide access to those which it in fact has created and retained.'" Turner v. U.S., 736 F.3d 274, 283 (4th Cir. 2013) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)). The undersigned further finds that Plaintiff has failed to introduce evidence through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith and therefore, the Defendant is entitled to summary judgment.

**D. The undersigned finds as a matter of law that Defendant has properly applied and asserted Exemptions 5 and 6 pursuant to 5 United States Code, §552(b)(5) – (b)(6).**

**1. The undersigned has conducted a detailed review of the Declaration of Ann C. Guy and Defendant's revised Vaughn Index and finds it is sufficient to support a finding that Exemption 5 – Attorney-client privilege and deliberative process**

**privilege as well as Exemption 6 – Personal Privacy, have been properly asserted and applied by the Defendant.**

**(a) <u>Exemption 5:</u>**

Exemption 5 provides that FOIA disclosure rules do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." <u>Hanson v. United States Agency for Int'l Dev.</u>, 372 F.3d 286, 290 (4th Cir. 2004) (quoting 5 U.S.C. § 552(b)(5)). Courts have interpreted Exemption 5 to exclude from disclosure documents encompassing the attorney-client privilege, attorney work product doctrine, and the deliberative process privilege. <u>Hanson</u>, 372 F.3d at 290-91 (citing <u>N.L.R.B. v. Sears, Roebuck, & Co.</u>, 421 U.S. 132, 149-50 (1975); *See* <u>Tax Analysts v. IRS</u> (294 F.3d 71, 76 (D.C. Cir. 2002) (Noting FOIA Exemption 5 covers the attorney work product doctrine, the attorney-client privilege, and the governmental deliberative process privilege.)

The "attorney-client privilege is 'the oldest of the privileges for confidential information known to the common law.'" <u>Hanson</u>, 372 F.3d at 291 (quoting <u>Upjohn Co. v. United States,</u> 449 U.S. 383, 389 (1981)). The Court further stated in <u>Hanson</u> that the "Supreme Court has long recognized that the attorney client privilege merits special protection 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in observance of law and administration of justice." <u>Id.</u> If the attorney-client privilege applies, "all communications between attorney and client" are afforded "absolute and complete protection from disclosure." <u>Hanson</u>, 372 F.3d at 291 (quoting <u>In re Allen</u>, 106 F.3d 582, 600 (4th Cir. 1997)).

Further, for a document to qualify under the deliberative process privilege, a document must satisfy two conditions: "its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation

against the agency that holds it." <u>Dept. of the Interior and Bureau of Indian Affairs v. Klamath</u> <u>Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001). Only those documents normally privileged in the civil discovery context are within the scope of Exemption 5. <u>NLRB v. Sears</u>, 421 U.S. at 148-49. In other words, documents that are not "obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work product, executive privilege) are protected from disclosure under Exemption 5." <u>Grand Cent. P'ship, Inc., v.</u> <u>Cuomo</u>, 166 F.3d 473, 481 (2d Cir. 1999) (internal quotations omitted). "Work product protects mental processes of the attorney, while deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." <u>Klamath Water Users</u>, 532 U.S. at 8-9 (internal citations and quotations omitted).

"The purpose of the deliberative process privilege is to allow agencies to freely explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." <u>State of Missouri ex rel. Shorr v. United States Army Corps of Engineers</u>, 147 F.3d 708, 710 (8th Cir. 1998). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decision by protecting open and frank discussion among those who make them within the Government." <u>Klamath Water</u> <u>Users,</u> 532 U.S. at 8-9 (internal citations and quotations omitted).

"Exemption 5 to the FOIA permits nondisclosure if the document in question is an inter-or intra-agency memorandum which is both predecisional and deliberative." <u>Ex rel Shorr</u>, 147 F.3d at 710. A predecisional document is one prepared in order to assist an agency decision-maker in arriving at this decision and which contains recommendations, draft documents,

proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Id. A document is deliberative if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its function. Id.

Here, Defendant DOE, NETL has sought to withhold information under Exemption 5 for information exchanged between NETL attorney Mark Hunzeker and several individuals/groups, including: an independent investigator contracted by NETL to conduct the internal investigation into Plaintiff's conduct while employed with NETL, Penn State University officials, Plaintiff's supervisor while employed, documents related to the "Management Directed Investigation (MDI)", and emails between NETL Counsel, NETL employees and HQ Human Capital Office. See Vaughn Index, ECF No. 70-1. Many of these documents related to Plaintiff's internal investigation and contained witness statements and communications in preparation of Plaintiff's criminal trial or revealed DOE, NETL's internal decision-making process regarding actions to be taken with Plaintiff's employment because of the ongoing investigation. Id.

Regardless, here, the OHA has upheld and found proper the Defendant's assertion of Exemption 5. See Ex. 53, at 5, ECF No. 62-54. Further, the undersigned finds that Plaintiff has not made any specific argument for the release of any records withheld under Exemption 5, asserting only generally that this exemption claimed by Defendant is unwarranted. Therefore, the undersigned finds that Defendant DOE, NETL has properly asserted and withheld information under Exemption 5.

**(b) Exemption 6:**

Exemption 6 allows for an agency to withhold and prevent the disclosure of information which would constitute a clearly unwarranted invasion of personal privacy. Havemann v. Colvin, 629 Fed.Appx. 537 (4th Cir. 2015). To determine if such an invasion would occur, the Court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." Havemann, 629 Fed.Appx. at 539 (quoting Yonemoto v. Dep't of Veterans Affairs, 686 F.3d 681, 693 (9th Cir. 2012).

Here, similar to the analysis above for Exemption 5, the undersigned notes that the OHA approved of Defendant's assertion and redaction of information pursuant to Exemption 6 to prevent the release of information discussing a NETL employee's disciplinary action and "personal background regarding the family of the NETL attorney." (Def's Reply, ECF No. 70, at 6) (*Guy Decl*.; Ex. 53, at 6 (ECF No. 62-54)). The OHA found that the "privacy interests of both the NETL employee and the NETL attorney outweigh any public interest in the disclosure of the redacted information." Ex. 53, at 6 (ECF No. 62-54). The undersigned agrees. Further, similar to Plaintiff's objections to the use of Exemption 5, Plaintiff has not made any specific argument for the release of any records withheld under Exemption 6, asserting only generally that this exemption claimed by Defendant is unwarranted. Therefore, the undersigned finds that Defendant DOE, NETL has properly asserted and withheld information under Exemption 6.

### (c) Adequacy of Vaughn Index:

A Vaughn index "is a list which describes each document withheld by an agency with sufficiently detailed information to enable a district court to rule whether it falls within an exemption provided by FOIA." Ethyl Corp v. EPA, 25 F.3d 1241, at 1244, n. 1 (4th Cir. 1994). Although there is "no set formula for a Vaughn index . . . the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each

document or portion of a document withheld is putatively exempt from disclosure." Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988). The Fourth Circuit has found a Vaughn Index insufficient where it did not contain the document's author, recipient or date. Rein v. U.S. Patent & Trademark Office, 553 F.3d 353, 366 (4th Cir. 2009).

Here, the undersigned finds that the Defendant DOE, NETL's Vaughn index has provided the court with a detailed analysis of each redaction and document withheld. See Vaughn Index, ECF No. 70-1. Specifically, the index describes the document type, date of the document, author of the document, recipients, the number of pages, the exemption asserted, the basis for the redactions, and an explanation for the redactions. Id. Therefore, the Court finds there is sufficient information to make a reasoned and informed decision as to the DOE, NETL's compliance with the FOIA.

**2. The undersigned finds that an *in camera* review is not necessary.**

Plaintiff requests the Court to conduct an *in camera* review of the redacted or otherwise withheld documents. However, an *in camera* review of the documents is not required and is discretionary. See 5 U.S.C. § 522(a)(4)(B); Simon v. United States Dept. of Justice, 796 F.2d 709, 710-711 (4th Cir. 1986). "*In camera* review is appropriate where the justifications for withholding are conclusory or not described in sufficient detail to demonstrate that the claimed exemption applies, or where there is evidence of agency bad faith such as where evidence in the record contradicts agency affidavits." Falwell v. Executive Office of the President, 158 F.Supp.2d 734, 738 (W.D.Va. 2001) (citing Carter v. United States Dept. of Commerce, 830 F.2d 388, 392-393 (D.C. Cir. 1987). As set forth in this Report and Recommendation, the Defendant has adequately explained its reasons for asserting the exemptions and redacting or withholding information responsive to Plaintiff's FOIA requests. Moreover, the Defendant has

filed an appropriate Vaughn Index. Because the Defendant has sufficiently demonstrated that the claimed exemptions apply, and because there has been no showing of bad faith, an *in camera* review of the documents is not necessary.

### VIII.   Conclusion

Therefore, for the reasons stated herein, the undersigned **RECOMMENDS** the Defendant's Motion for Summary Judgment (ECF No. 61) be **GRANTED**, Plaintiff's "Note and Clarification", construed as a Motion to Compel (ECF No. 60), be **DENIED AS MOOT** and Plaintiff's Amended Complaint (ECF No. 50) be **DISMISSED WITH PREJUDICE**.

Any party within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Thomas Kleeh, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.  28 U.S.C. §636(b)(1).  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record and any party appearing *pro se* in compliance with the rules for electronic case filing in the Northern District of West Virginia. Additionally, as this report and recommendation concludes the referral from the District Court, the Clerk is further **DIRECTED** to terminate the magistrate judge's association with this case.

Respectfully submitted this 8th day of February 2019

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE