## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

AYYAKKANNU MANIVANNAN,

          **Plaintiff,**

v.                            **Civ. Action No. 1:17cv192**
                                        **(Judge Kleeh)**

DEPARTMENT OF ENERGY (National
Energy Technology Laboratory),

          **Defendant.**

### MEMORANDM OPINION AND ORDER ADDRESSING PARTIAL REMAND [ECF NO. 97] AND GRANTING SUMMARY JUDGMENT [ECF NO. 61]

Pursuant to the United States Court of Appeals for the Fourth Circuit's January 12, 2021 unpublished per curiam opinion [ECF No. 97], the Court addresses on remand Defendant's Motion for Summary Judgment as to Plaintiff Ayyakkannu Manivannan's Freedom of Information Act ("FOIA") request Numbers 946 and 833. As detailed below, the Defendant's denial of FOIA request Numbers 946 and 833 were proper under 5 U.S.C. § 552(b).

## I.    <u>RELEVANT PROCEDURAL HISTORY</u>

Plaintiff, Dr. Ayyakkannu Manivannan, is a former employee of the Defendant, United States Department of Energy ("DOE") at the National Energy Technology Laboratory ("NETL") in Morgantown, West Virginia. Plaintiff was placed on administrative leave on August 12, 2015, during an internal investigation into allegations against him and was forbidden from accessing NETL property or spaces. ECF No. 12 at 4. This

internal investigation revolved around allegations of an improper relationship with an intern, harassment, and the unlawful use of a computer that ultimately led to a criminal case against Plaintiff in Pennsylvania state court.

Upon the onset of administrative leave, Plaintiff's office was secured under lock and key, and was controlled by the NETL security personnel. Id. No one was permitted access to the area without consultation with the NETL Office of Chief Counsel. Id. Plaintiff resigned on June 16, 2016, which became effective on June 17, 2016. Id. at 3.

In May 2017, Plaintiff submitted a FOIA request, requesting "records showing Mark Hunzeker arranging a visit for Dr. Manivannan with his supervisor to have him come to NETL to collect his personal belongings from his office, as well as other documents." ECF No. 19-9 at 4. On May 5, 2017, Plaintiff received a response that stated NETL conducted a search for responsive records, and no responsive records were found. ECF 17-9 at 4. Plaintiff appealed this determination, challenging the adequacy of the search conducted under FOIA. ECF 17-9 at 6. On May 23, 2017, the Office of Hearings and Appeals ("OHA") responded, saying that DOE/NETL would withdraw its May 5, 2017, determination, which formed the basis for the appeal and that NETL would issue a new response letter after it conducted an

additional search. ECF No. 17-9 at 4. OHA thereby dismissed Plaintiff's FOIA Appeal as moot. OHA Case No. FIA -17-0012; Id.

Plaintiff filed a civil action in this Court on November 6, 2017, citing 5 U.S.C. § 552(a)(6)(C)(i) and alleging violations of 18 U.S.C. §§ 21, 1701, and 1702 for NETL's failure to adequately respond to several requests for records pursuant to FOIA. ECF No. 1. The district court granted summary judgment in favor of NETL on September 30, 2019. ECF No. 88. Plaintiff appealed to the United States Court of Appeals for the Fourth Circuit. ECF No. 90. The Fourth Circuit vacated the district court's judgment in part, remanding the matter for further determinations regarding FOIA request Numbers 946 and 833. ECF No. 97.

## II.  FACTUAL BACKGROUND

Pursuant to the Fourth Circuit's opinion, FOIA request Numbers 946 and 833 must be addressed. ECF No. 97. The circumstances necessitating remand are detailed below.

### A. FOIA Request Number 946

The Fourth Circuit found that the district court erred in finding that Plaintiff did not constructively exhaust his administrative remedies with respect to request Number 946.

"FOIA provides that a requester may be treated as if []he exhausted the administrative appeals process where the agency did not provide a timely determination." Khine v. United States

<u>Dep't of Homeland Sec.</u>, 943 F.3d 959, 966 (D.C. Cir. 2019); see <u>Coleman v. Drug Enf't Admin.</u>, 714 F.3d 816, 820 (4th Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(C)(i)). However, the constructive exhaustion provision only applies "so long as the agency has not cured its violation by responding before the requester files suit." <u>Coleman</u>, 714 F.3d at 820; <u>see also</u> <u>Pollack v. Dep't of Just.</u>, 49 F.3d 115, 118-19 (4th Cir. 1995). However, "[a] request upon remand [from an administrative appeal] is still a request" and "it, too must be acted upon within twenty working days pursuant to 5 U.S.C. § 552(a)(6)(A)(i)." U, 714 F.3d at 824.

The Fourth Circuit found that request Number 946 was constructively exhausted because the appropriate benchmark for determining if NETL cured its failure to respond to request Number 946 within 20 days before Plaintiff filed his initial compliant. Since NETL did not respond within the 20 days, Plaintiff had constructively exhausted his claim with respect to request Number 946. Because request Number 946 was constructively exhausted, the Court now must determine whether the agency's search was adequate and whether any exemptions were applicable.

### B. <u>FOIA Request Number 833</u>

The Fourth Circuit found the district court erred in finding that NETL met its burden to show that it properly

4

redacted or withheld information pursuant to the statutory exemption in 5 U.S.C.§ 552(b)(5).

Exemption 5 provides that FOIA disclosure rules do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Fourth Circuit found that the district court lacked an adequate factual basis to rule on the propriety of NETL's redactions and withholding of documents under this exemption pursuant to FOIA request Number 833. The Court recommended applying Klamath to determine whether the nature of the relationships bars the exemption for inter-agency and intra-agency relationships. See 5 U.S.C. § 552(b)(5); Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 12 (2001).

### III. **LEGAL STANDARD**

Summary judgment is appropriate "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

The nonmoving party is required "to make a sufficient showing on an essential element of her case with respect to which he has the burden of proof." <u>Id.</u> at 322. When a moving party supports its motion under Rule 56 with affidavits and other appropriate materials pursuant to the rule, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . the response . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quotation omitted).

On a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 352 (D.C.Cir. 1978); <u>Students Against Genocide v. Department of State</u>, 257 F.3d 828, 833 (D.C.Cir. 2001) (quoting <u>Goland</u>). "A defendant agency has the burden of establishing the adequacy of its search and that

any identifiable document has either been produced or is subject to withholding under an exemption." Havemann v. Colvin, 629 Fed.Appx. 537, 539 (4th Cir. 2015)

The agency may meet its burden through the production of affidavits describing the manner in which it undertook the requested information search. See id. In order to invoke an exception, however, the agency's affidavits "must be relatively detailed and nonconclusory." Id. (citing Simmons v. United States Dept. of Justice, 796 F.2d 709, 711–12 (4th Cir. 1986)). The court may presume "the credibility of such affidavits, so long as it has no reason to question the good faith of the agency." Id. (citing Bowers v. United States Dept. of Justice, 930 F.2d 350, 357 (4th Cir. 1991)). To overcome the presumption, "a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." Id. (citing Miller v. United States Dept. of State, 779 F.2d 1378, 1384 (8th Cir. 1985)).

Under FOIA, federal agencies "shall make [agency] records promptly available to any person," so long as the person's request "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed . . . ." 5 U.S.C. § 552(a)(3)(A). Courts have long held that "FOIA reflects a

general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." Id. (quoting Dept. of Defense v. FLRA, 510 U.S. 487, 494 (1994)). Notably, the FOIA does not require an agency to create or retain any document; rather, it only "'obligates them to provide access to those which it in fact has created and retained.'" Turner v. U.S., 736 F.3d 274, 283 (4th Cir. 2013) (quoting Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)).

There are, however, certain enumerated exemptions from the FOIA's mandate to disclose. See 5 U.S.C. § 552(b)(1)-(9); New Hampshire Right to Life v. Dep't of Health and Human Svcs., 13 S. Ct. 383 (2015). The Court must decide as a matter of law whether a document falls within one of the exemptions. Wickwire Gavin, P.C. v. U.S. Postal Service, 356 F.3d 588, 591 (4th Cir. 2004). In addition, courts must construe the FOIA's exemptions narrowly and place the burden on the agency to show that its exemptions are proper. Id. (citing 5 U.S.C. § 552(a)(4)(B); J.P. Stevens Co. v. Perry, 710 F.2d 136, 139 (4th Cir. 1983)).

### IV.   FOIA Exemptions (5 U.S.C. § 552(b)(1)-(9))

FOIA allows plaintiffs such as Dr. Manivannan to request access to federal agency records or information. However, exemptions to such requests include those:

> (1)   (A) specifically authorized under criteria established by an Executive order to be kept

8

secret in the interest of national defense
or foreign policy and (B) are in fact
properly classified pursuant to such
Executive order;

(2)   related solely to the internal personnel
      rules and practices of an agency;

(3)   specifically exempted from disclosure by
      statute (other than section 552b of this
      title), if that statute—
      (A)(i) requires that the matters be withheld
      from the public in such a manner as to leave
      no discretion on the issue; or(ii)
      establishes particular criteria for
      withholding or refers to particular types of
      matters to be withheld; and (B) if enacted
      after the date of enactment of the OPEN FOIA
      Act of 2009, specifically cites to this
      paragraph.

(4)   trade secrets and commercial or financial
      information obtained from a person and
      privileged or confidential;

(5)   inter-agency or intra-agency memorandums or
      letters that would not be available by law
      to a party other than an agency in
      litigation with the agency, provided that
      the deliberative process privilege shall not
      apply to records created 25 years or more
      before the date on which the records were
      requested;

(6)   personnel and medical files and similar
      files the disclosure of which would
      constitute a clearly unwarranted invasion of
      personal privacy;

(7)   records or information compiled for law
      enforcement purposes, but only to the extent
      that the production of such law enforcement
      records or information (A) could reasonably
      be expected to interfere with enforcement
      proceedings, (B) would deprive a person of a
      right to a fair trial or an impartial

adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9)   geological and geophysical information and data, including maps, concerning wells.

5 U.S.C. § 552(b).

## V. **DISCUSSION**

For the reasons that follow, summary judgment is proper on the remaining claims under FOIA request Number 946 and 833.

### A. **FOIA Request Number 946**

FOIA request Number 946 includes a variety of documents pertaining to Plaintiff's personal belongings and project credits. ECF No. 50, pp. 3-5. These records include:

10

1. Records showing Hunzeker arranging a visit for Plaintiff with his supervisor to have him come to NETL to collect his personal belongings from his office.

2. All paperwork and records related to any official delivery of his personal belongings.

3. Records of Plaintiff's personal items (itemized list) that Mark Hunzeker delivered officially with official signatures and Dr. Manivannan's acceptance signature for the property.

4. Records on all the people who had access to his office since the beginning of his administrative leave from 2015 and until now.

5. Justification records denying his visit to come to NETL to collect his personal belongings.

6. Records about Hunzeker's notes on how he handled the situation whether to permit Plaintiff to visit the NETL site to collect his office personal belongings.

7. Records related to all information regarding the Raman project and the documents left in his office.

8. Justification records by management (Randy Gemmen) for denying him to work on the project while it was allowed for others to adopt this idea to carry out this research project without crediting him.

9. Records stating specific reasons for keeping Plaintiff on administrative leave during that time by Randy Gemmen. Randy Gemmen's justification records for not crediting him for work during the NETL investigation.

10. Records indicating whether Plaintiff has been credited for this work as of now.

11. Records on the name of the person hired to execute this project and all researchers' names involved in this project.

12. Plaintiff's archived e-mail records and communications from NETL

13. Plaintiff's e-mail records and communications with Randy Gemmen.

14. Records related to the actions taken (all e-mails, phone conversations, discussions, etc.) by Randy Gemmen through his supervisor Larry Shadle in 2015 to stop this research project, including the removal of a summer student Amy Falcon. Specific e-mails directing Larry Shadle to take punitive action on Plaintiff and asking him to deviate/direct Plaintiff to write a review article on thermal barrier coatings.

ECF No. 50, pp. 3-5.

Here, the agency's search was adequate, as detailed in Ann C. Guy's declaration [ECF No. 62-1], whereby Plaintiff was sent 689 pages with no redactions. ECF No. 62-1. In Plaintiff's Amended Complaint [ECF No. 50], Plaintiff identifies four concerns regarding the response to his FOIA request Number 946. ECF No. 50, at 5. These concerns were:

A. The Agency failed to provide Documentation for points 1-6 and, in particular, withheld the itemized list of personal belongings and the required records of official delivery.

       B. The Agency failed to provide documentation supporting Agency's declaration to Congress persons that Plaintiff's personal belongings were returned.

       C. The Agency failed to provide documentation to justify exclusion of Plaintiff's credit for the Raman project.

       D. The Agency was requested to deliver all the published work related to Raman Project initiated by Dr. Manivannan.

ECF No. 50; ECF No. 62-1, at 23-24. In essence, Plaintiff's Amended Complaint focused on concerns regarding primarily Paragraphs 3, 8, and 11 of FOIA request Number 946.

In the Declaration of Ann Guy, NETL's FOIA Officer, these omissions are explained as follows:

       A. After a thorough search of agency records for an "itemized list of personal belongings and the required records of official delivery", no such documents were discovered. However, two affidavits from co-workers of the Plaintiff regarding the return of his property and photos taken of his office were provided to Plaintiff along with emails, communications, and security logs of personnel entering/leaving Plaintiff's office while he was on administrative leave.

       B. The request for "documentation supporting Agency's declaration to Congress persons that my personal belongings were returned," was never made or submitted by the Plaintiff, and Ann Guy declared that she is unaware of said declaration.

       C. Emails and communications between supervisors and the authors/contributors of the publication were provided to the Plaintiff (55 pages) indicating that Dr.

Manivannan did not contribute to the Raman project or the publication. Also, Plaintiff identifies the "names of the people running this project". This information was released in detail as a portion of the Agency File in a separate action filed by the Plaintiff with the Merit Systems Protection Board (MSPB)using another venue to ask for the same information.

D. The request for "all the published work related to the Raman Project initiated by Dr, Manivannan" remains the Government's property.

Additionally, FOIA request Number 946 largely falls within the exception articulated in 5 U.S.C. § 552(b)(5), whereby disclosure of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," is not required. 5 U.S.C. § 552(b)(5). Within FOIA request Number 946, Paragraphs 1, 2, 3, 4, 8, 9, and 14 fall within the exception for inter-agency and intra-agency memoranda or letters that are protected by legal privileges. See 5 U.S.C. § 552(b)(5).

U.S.C. § 552(b)(2) additionally protects reports "related solely to the internal personnel rules and practices of an agency" from being required to be disclosed. 5 U.S.C. § 552(b)(2). Within FOIA request Number 946, Paragraph 5 falls under the exception for reports related solely to internal personnel rules and practices. See 5 U.S.C. § 552(b)(2).

14

Lastly, 5 U.S.C. § 552(b)(6) protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," from disclosure. 5 U.S.C. § 552(b)(6). Within FOIA request Number 946, Paragraphs 6, 7, 10, 11, 12, 13, and 14 fall within the exception for personnel files. See 5 U.S.C. § 552(b)(6).

Therefore, such personal intra-agency emails, notes of supervisors, and justification discussions are not subject to disclosure, despite Plaintiff's FOIA request. Accordingly, summary judgment is proper as to Plaintiff's claims regarding FOIA request Number 946.

## B. __FOIA Request Number 833__

FOIA request Number 832 includes a variety of records pertaining to his proposed removal from his job. ECF No. 50, pp. 5-8. These records include:

1. Records pertaining to all the itemized expenses made using taxpayer funds by the government for his investigation.

2. All the personal information of his office files documents provided to PSU police and the Centre County (Pennsylvania) DA.

3. Justification document information how NETL circumvented the government EEO procedures in this particular investigation.

4. Release of the actual formal complaint made to DOE by the outside entities (Ms. Faith Beck, Penn State Police and Centre County DA) regarding his alleged conduct, misuse of

power, failure to follow procedures, lack of candor, etc.

5. Justification document or decision document by the management for his internal investigation initiated by Randy Gemmen.

6. All e-mail communications of Randy Gemmen with management, Plaintiff, and Larry Shadle during the time of investigation.

7. The e-mail communications of Randy Gemmen with Plaintiff forcing him to attend the internal investigation without legal counsel.

8. All e-mail communications of Randy Gemmen with Larry Shadle to take punitive action against Plaintiff before the investigation.

9. All the correspondent documents and the involvement by Randy Gemmen, MaryAnn Alvin, and Nancy Vargas, and the Office of General Counsel justification document to contact Carmen Borges of Penn State University.

10. All the documents related to Randy Gemmen and Mary Ann Alvin's justification to initiate the investigation without following the government EEO procedures.

11. All the correspondent documents and conversations made by Carmen Borges of Penn State University with NETL.

12. The formal complaint by Carmen Borges of Penn State University and the correspondence with Nancy Vargas.

13. All communication documents with Centre County officials.

14. The video audio tape records pertaining to the investigation made with him and all other employees inside NETL and all outside students and faculty members.

16

15. The management discussion and decision why the report prepared by Marisa Williams was delayed for 4 months from January 2015 to April 2015. Plaintiff seeks release of the information and justification why NETL did not fire him since January 2015 until he resigned.

16. Release of the information why management did not acknowledge or respond to his refutation package for the "proposal for removal" notice given to him by NETL.

17. The justification document for entering the unconfirmed accusations in his SF-50 form.

18. Release of the information regarding the identity of the person who prepared the "Notice of proposed removal."

19. All the evidence claiming that he abused a student for few years.

20. All information regarding the analysis of his office computers and laptop computers and the document providing that IP log information to the Centre County DA and Penn State police.

21. The copy of his personal passport size photo (taken during his internal investigation) given to the Centre County, DA for the Penn State news release.

ECF No. 50, pp. 5-8.

Exemption 5 provides that FOIA disclosure rules do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption applies to materials that fall under, as relevant here, the attorney-client privilege, the attorney work product

17

doctrine, and the deliberative process privilege. See Hall & Assocs. v. Env't Prot. Agency, 956 F.3d 621, 624 (D.C. Cir. 2020); Hanson v. U.S. Agency for Int'l Dev., 372 F.3d 286, 290-91 (4th Cir. 2004). The exempted records must be inter-agency or intra-agency documents. See 5 U.S.C. § 552(b)(5); Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 12 (2001). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." Department of Air Force v. Rose, 425 U.S. 352, 361 (1976).

According to Klamath, "[t]o qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Klamath, 532 U.S. at 8. This includes deliberative process documentation, which covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Id. (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)).

Here, the Fourth Circuit found that the district court lacked an adequate factual basis to rule on the adequacy NETL's redactions and withholding of documents under this exemption as to request Number 833. Specifically, the Fourth Circuit noted

18

that some of the responsive documents appeared to have been sent to employees of Penn State University or attorneys in the district attorney's office that oversaw Plaintiff's prosecution in Pennsylvania. As a threshold matter then, this Court must first determine whether the records were "inter-agency or intra-agency" before deciding whether NETL stated a good faith basis for applying the exemption. 5 U.S.C. § 552(b)(5). It is true that the communications between NETL with Penn State University and attorneys in the district attorney's office are neither inter-agency, nor intra-agency communications, and therefore fall outside of the scope of Exemption 5. However, as detailed below, these communications fall within other FOIA exemptions because they were compiled for law enforcement purposes.

In Plaintiff's Amended Complaint, he stated his concerns regarding FOIA request Number 833 as:

> A. Not including justification documents for (1) an accusatory investigation report devoid of evidence to support it; (2) an unfounded personal action "Notice of Proposed Removal (NPR); (3) unsupported accusations in employee's SF-50 form; and (4) two amendments to SF-50 Forms.
>
> B. Document accusations for the accusations in Paragraph 19.
>
> C. Video records requested in Paragraph 14.
>
> D. Paragraphs 12 and 17 being withheld under exemptions 5 and 6.

ECF No. 50, at 8-9; ECF No. 62-1, at 24.

Here, the agency's search was adequate, as detailed in Ann C. Guy's declaration [ECF No. 62-1], whereby Plaintiff was sent several of his requests. ECF No. 62-1. However, several of the requests were speculative or did not actually exist within the agency (Paragraphs 3 and 10), and were thereby not included in the request.

FOIA request Number 833 largely falls within the exceptions articulated in 5 U.S.C. §§ 552(b), whereby disclosure of inter and intra-agency records, "records or information compiled for law enforcement purposes ...", records compiled for law enforcement purposes, or private personnel files are not required despite request. 5 U.S.C. §§ 552(b). The response to FOIA request Number 833 was properly redacted because many of the requested documents did not exist (Paragraphs 3 and 10), involved protected inter or intra agency communications (Paragraphs 5, 15, 16, and 17), were compiled for law enforcement purposes (2, 12, 14, 19, and 20), or involved private personnel files (Paragraphs 6, 7, 8, 9, 11, and 18). Thus, summary judgment is proper as to Plaintiff's claims regarding the denial of FOIA request Number 833.

## VI.  **CONCLUSION**

In conclusion, the agency's search was adequate, as detailed in Ann C. Guy's declaration [ECF No. 62-1] and FOIA request Number 946 was properly denied under 5 U.S.C. § 552(b).

Additionally, the remaining nondisclosed portions of FOIA request Number 833 was properly denied under 5 U.S.C. § 552(b). Thus, Defendant's Motion for Summary Judgment as it pertains to FOIA request Numbers 946 and 833 [ECF No. 61] is **GRANTED.** Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE.**

This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of Department of Energy (National Energy Technology Laboratory)

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system and to any unrepresented parties by certified mail return receipt requested.

**DATED:**  February 21, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

21